All right, Mr. Neal, we'll hear from you. Good morning, Your Honors. May it please the Court. As the Court is aware, we're here today only on the Attorney's Fee Award issue. The District Court awarded $570,000 in fees, where the plaintiff recovered $58,000 in compensatory damages. The District Court erred in three ways that rise to the level of an abuse of discretion. I'm going to try to talk about at least two of those today. The first arose in the context of the District Court's determination that the plaintiff obtained a significant degree of success, which, as the Court knows, is what the cases say is the most important factor for a District Court to look at in awarding attorney's fees, the plaintiff's success as a whole in the case. The District Court cited two facts in support of that statement. The first was the plaintiff won on liability, clearly not disputed at this point. We chose not to appeal the last trial verdict. But any time you're talking about attorney's fees, the plaintiff will have won on liability. So that doesn't really add much to the question of whether the plaintiff obtained a significant degree of success. Second, the Court said that the plaintiff recovered $58,240 in compensatory damages. This Court's cases show both that the District Court abused its discretion in reaching that determination and that this is a situation that constitutes a plaintiff achieving only limited success. The cases say that when the recovery is only a small part of the total damages sought, that is a situation where the plaintiff did not obtain a significant degree of success. That comes from, we've cited cases on pages 17 through 18 of our brief, we talk a lot about the Goomheer case, and then the other one is the Farrer v. Hobby case. What was sought here? I'm sorry? What did he seek here? He sought, he didn't specify the amount of compensatory damages, but also sought $250,000 in punitive damages. So that's your main point, that he didn't get punitive damages? Yeah, on this first abuse of discretion, that's right. And that's important because in the Farrer case, Farrer v. Hobby, the U.S. Supreme Court says that a District Court must give primary consideration in a damages case to whether the plaintiff achieved what the plaintiff was trying to achieve in terms of a damage award. That's 1992. A year later, this Court in the Loggins v. Dello case, which we've cited in our brief, expressly holds that concept applies to the situation where a plaintiff seeks compensatory and punitive damages, but only recovers compensatory damages. The District Court did not address that issue at all, much less give it the primary consideration that the U.S. Supreme Court says it has to be given. So that in itself, because the Supreme Court says the District Court has to give a primary consideration and the District Court didn't give it any consideration, it simply said plaintiff did not obtain punitive damages, but plaintiff did obtain compensatory damages. That's essentially saying I'm not going to consider it. It's certainly not giving it primary consideration. That in itself is an abuse of discretion because that went to the Court's determination of a significant degree of success, which then tainted the rest of the Court's opinion on attorney's fees. Counsel, does it matter whether the number of hours reasonably expended on the case would be the same, whether they won punitive damages or not? No, the cases don't say that, Your Honor. They say that the Court has to consider the relief sought versus the relief obtained, and then this Court expressly applies that to the punitive damages context. And that somewhat ties into the second point that I'll get to in a moment about the overall hours in relation to once the other side knew what the damages were going to be. Closing out on this point, so we've got error in the way the District Court handled it, given what the Supreme Court in this case said the Court must do, and then we have a limited success. And that's recovered a small amount, only prevailed on one of three claims that were originally asserted. And I know the plaintiff claims there were really only two claims, and I would direct the Court to the complaint at appendix page 10, paragraphs 54 and 55 that clearly show there were two different FRSA claims. And then the distinction between the punitive damages and the compensatory damages is the third reason why there was limited success here, and the fourth is this is not a case where there was some general benefit for the public. You know, there was no general civil rights issue raised or, you know, sued against a government entity about some practice. And so that alone should result in reversal, and the Court should then take up the question of whether it should remand or do a calculation on its own. The second error that I wanted to talk about that rises to the level of abusive discretion is the District Court not addressing, much less following, the principle in the Goomheer case where the Court said that fees cannot be greatly disproportionate to the ultimate benefits that may be reasonably obtainable, and then criticized the plaintiff for incurring large fees once the plaintiff knew that the case was a relatively small damages case. In that instance, it was $1575,000, and that was 15 years ago or something like that. The District Court should have applied that principle. We raised that argument, and the Court just didn't address it at all. And so that constitutes not applying a factor that this Court has said has to be considered. And, in fact, the Counsel doesn't that factor work both ways? I mean, when the defense realizes that there's only $58,000 involved, shouldn't that cause the defense to maybe not expend as much vigor and employ as many attorneys and fight the case as strenuously? You know, sometimes the way the case is defended dictates the amount of effort, the amount of time that a plaintiff's counsel has to put into it. So doesn't it work both ways? Well, I agree that sometimes that can be an issue that is not... I read in the plea, in the briefing, and you can tell me if this is correct, something like 10 or 11 attorneys on the defense side? Over the course of 10 years in this case. Yeah, in a 10-year case. That's right, Your Honor. Now, it's not the same attorneys doing the same things. You didn't go down to a single lawyer. No. And you're saying, well, they had three. That's right. But you never went down to one. Well, we've cited cases, Your Honor, that make the point that it's not an apt comparison of plaintiff's counsel to defendant's counsel. I mean, this Court called it an apples to oranges comparison. And if they don't go down to three, that was the suggestion we made. The overall point is once they knew the damages were $58,000, they shouldn't have had, it's not just three lawyers, it was not one, not two, but three FRSA specialists that they had involved in the case. Well, would you want them to have somebody who's unfamiliar with FRSA? Well, one of the counsels was there based on being a local counsel requirement. So, you know, I take that. Before you get, I had one other thing I wanted to ask on a topic I guess you weren't planning to raise. But you make a point about the fact that the first trial resulted in a reversal because of the error proposed by the plaintiff. And you say the district court erred in not reducing the fees there. As I recall, the judge said, well, because the damages award was derived from that trial and that carried through, that it was appropriate toward fees. What's your proposal? How would, how, if there was a way to, is there a way to segregate the damages fees, so to speak, from the part that you would say is attributable to the error? You know, it's a rough number, Judge Colleton. I'd say probably 80, 85 percent of the case was not about the damages. You know, the damages testimony was a very short part of it. There was a little bit of the briefing afterwards, so roughly of that 103,000, I'd say it's about 80, 85,000. But you seem to argue it should be zeroed out. Well, because that's what the cases say. They say if the plaintiff's responsible, then it should be zeroed out. Well, I know, but this is a little bit unusual because of the damages part, so. And we take, we take that point, you know, I'd say that isn't what those cases say. But if the court was going to do that, he didn't, the judge didn't do that. It was an abuse of discretion to not do anything on that point. And Okay. That's all I wanted to cover. Okay. And just let me, well, let me try to reserve the last 30 seconds if I can. Thank you. All right. You may. Very well. Mr. Dingwall, we'll hear from you. Thank you. Good morning. May it please the Court. I'm Jeff Dingwall on behalf of Edward Blackerby. I think starting with the district court's discretion in awarding the fees that he did, it's clear that he, it wasn't like a rubber stamp situation. Judge Brewer was on this case shortly after the summary judgment decision was issued by Judge Guy Tan. He presided over all three trials, ruled on countless motions, and in reviewing the fee submitted, and also disallowed the cost petition that we submitted for our litigation costs. So this wasn't some situation where the district court simply rubber stamped a fee petition. There was significant analysis and review of the hours submitted, the costs submitted, and a reduction was made. I don't think the argument is that it was a rubber stamp. I think the argument is that it was analytically flawed. Correct. So why don't you address that? Why wasn't it error to consider the failure to get any punitive damages? Well, there was a finding in our favor on the punitive issue. Now, the fact that there wasn't an actual dollar amount attached to that, the jury did come back saying you met the punitive standard, we're just going to give you zero dollars for that. So we were actually successful on that claim. You know, the damages just weren't there. Well, I guess it depends how you define success. I would agree with that. As a plaintiff's lawyer, I understand that. Well, maybe, but I think the defense position is that should be viewed as limited success if you get a finding with zero damages. Well, I don't think the amount of time that went into the case changes at all based on that, on the punitive phase of the case. It was bifurcated and I think we spent maybe a quarter of a day on the punitive damages issue. So if anything, maybe there's a few hours there. But the BNSF has not pointed to any individual time entries that they claim are unnecessary or that we over-expended on. They're just simply saying as a blanket measure, wipe out these hours. And they haven't, before the district court and before this court, have not said these are the specific hours, these are the specific time entries that should be disallowed as a result of they were unnecessary or they were devoted towards something that was unsuccessful. They're just saying as a blanket matter, wipe out the fees more than half. So to the extent that their argument is we over-expended, there's been no issue raised at the district court or here as to what that time looks like. And going back to, you know, the argument that there was limited success on the compensatory damages, again, that's very relative and very fact specific. And going back to 2015 when that case was tried and the verdict was rendered, this was I think the third case in the country that had ever been tried under this legal standard as adopted in 2009. So it wasn't like there was some great deal of precedent out there. We were finding our way through it just as much as the court was. There was only at that point two appellate decisions, including the one from this court, which at that point had not been applied in a trial setting. And so it was very unclear as to how that would really play out until our case came up on appeal for the first time. There was no pattern jury instructions at the time. And frankly, we brought a case where there was no economic damages. So it wasn't something where it was a predictable setting. We didn't have a liquidated damages case where we were going in and saying, we know we're only going to recover $20,000 or something of that nature. So we had to litigate this case as But even Judge Boo, I thought, said in his order that the fact that the first trial was reversed based on the flawed plaintiff's theory would have been a basis to reduce. He just declined to do so because of the damages component. Isn't that right? He did reduce the hours on appeal after that. So it was only on the appeal. But why shouldn't the bulk of that trial be disallowed? Why shouldn't the bulk of the fees for that trial be disallowed since it was fruitless due to the plaintiff's faulty theory? Why would a case support that, that if you propose bad instructions and get a reversal that you can't get fees? I think the case laws, the cases that reduce fees on that theory are not that somebody submitted a jury instruction that was adopted by the court and given. They are more where the plaintiffs have exercised some sort of dilatory conduct, they have promoted theories that are really beyond the scope of what could be expected to be reasonable. Things of that nature have been exercised in delay, that type of conduct. In this case, that's not what happened at all. We had, again, very limited precedent to go off of. We proposed a jury instruction based on established case law and they proposed one that was different. The district court adopted ours. Similarly, what happened in the second trial was they proposed a jury instruction that the district court adopted that became the basis for reversal by this panel on round two. I don't think either of those were necessarily in bad faith. We were taking law that we thought was applicable, they were taking law that they thought was applicable. The district court made a decision and as far as why shouldn't the totality of the hours spent on trial one be disallowed, there is just simply no way to determine what hours spent were applicable to the damages verdict versus liability. They are really part and parcel. But couldn't that be estimated? We have a second trial that was only on liability, for example, so presumably that should tell us what it costs to try only the liability phase. I would suggest that the hours were almost identical. The trial itself, both trials two and three were tried over the exact amount of time. The exact same witnesses almost, I think we put on our case about a day and a half each and each time I think they did about the same. I think the jury deliberated for exactly two hours every time. I am not sure how that helps you. That suggests that the addition of the damages in the first trial didn't really result in any fees. Well, that maybe the first trial should just be zeroed out. I think it is impossible to zero out the verdict from the first trial because, again, we just don't know. If the evidence was the same and there was a jury verdict resulting in a monetary award to the plaintiff, there is simply no way of determining what connected with the jurors, what made them arrive at that number, any more so than it is to go back and look, guessing and that is all it would be is a guesswork on what the jurors considered important and what they didn't. And here we have got BNSF saying, look, the monetary verdict from the first trial has to be considered here as a basis for the attorney fees and yet they also want us to throw out all the time that it went into attaining that verdict. I don't think you can have it both ways. So either that time mattered in achieving that verdict which BNSF advocated for as the law of the case or if all of that time goes away, I don't see how that verdict can also stand on its own in a vacuum. I think a final point on this and BNSF's position as a whole is that adopting this approach that they are taking, this proportionality standard or what have you, really paints lawyers in an ethical conundrum where we have to decide how much work to put in on behalf of our client and trying to guess what the monetary outcome of that case might be, if any. And so it incentivizes defense lawyers to bring the full range of everything they have, money, time, resources, against a plaintiff where a plaintiff has to stand back and say, well, geez, I don't know if I can do this or not because maybe it is over lawyering the case or I am doing too much work and I might not get the result. And it really paints lawyers in an ethical conundrum trying to decide how much to advocate for their client in those cases where the outcome is uncertain and certainly where the legal principles and issues are no less important in any civil rights case. With that, I don't think I need to use my 12 seconds. Thank you very much. Thank you for your argument. Thank you. Judge Shepard, I would like to go back to your question. I am not sure I fully answered it. That issue we were talking about with the staffing of the case once the damages were limited, it is something that this Court in the Goob-Hairs case says the district court had to consider. And here, the district court didn't consider our argument on that at all, didn't address it one way or the other. There is no finding that BNSF ran up the cases or BNSF had all these lawyers and so it ought to be treated the same. Their argument that we took steps that led to the fees being increased on their side is just that. It is argument. The things they point to are not high dollar things. And so we would ask you, if you are considering that point, to bear that in mind. Thank you, Your Honors. We are asking that the Court reverse and modify the award. All right. Thank you for your argument. Thank you to both counsel. The case is submitted. The Court will file a decision in due course.